IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LISA O.,[1]                                                    Case No. 1:20-cv-00272-SB

                          Plaintiff,                    **OPINION AND ORDER**

                  v.

ANDREW M. SAUL, Commissioner of
Social Security,

                          Defendant.

---

**BECKERMAN, U.S. Magistrate Judge.**

Lisa O. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her application for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. §

405(g). For the reasons explained below, the Court reverses the Commissioner's decision and

remands for further proceedings consistent with this opinion.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATIONS**

Plaintiff was born in September 1973, making her forty-two years old on April 10, 2015, the alleged disability onset date. (Tr. 23.) Plaintiff has an associate degree and past work experience as an administrative clerk and computer technician. (Tr. 24, 263.) In her applications, Plaintiff alleges disability due to club feet, carpal tunnel syndrome, tennis elbow, foot and ankle pain, osteoarthritis, back and hip issues, depression, and anxiety. (Tr. 121.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on September 20, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 15.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on December 13, 2018. (Tr. 67-99.) On January 24, 2019, the ALJ issued a written decision denying both applications. (Tr. 15-25.) On December 27, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-3.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-2.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other

PAGE 3 – OPINION AND ORDER

work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-25.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 10, 2015, the alleged disability onset date. (Tr. 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "[C]lub feet, carpal tunnel syndrome, peripheral neuropathy, and obesity[.]" (Tr. 18.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 19.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "sedentary work," subject to these limitations: (1) Plaintiff can "lift, carry, push and pull 10 pounds occasionally and less than 10 pounds frequently"; (2) Plaintiff can "sit for six hours in an eight-hour day and stand or walk for two hours in an eight-hour day"; (3) Plaintiff can frequently "operate hand controls bilaterally," "reach overhead and in every direction bilaterally," and "finger and feel"; (4) Plaintiff can "occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds"; and (5) Plaintiff needs to "avoid extreme cold or heat, and vibrations" and "exposure to unprotected heights." (Tr. 20-21.) At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work. (Tr. 23.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a (1) "Charge Account Clerk," (2) "Document Preparer," and (3) "Appointment Clerk." (Tr. 24.)

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (1) improperly concluding that Plaintiff's mental impairments of depression and anxiety were non-severe impairments at step two of the sequential evaluation process; (2) failing to provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony; (3) failing fully to credit the lay witness testimony provided by Plaintiff's son, Jesse O., and Plaintiff's friend, Betty R.; and (4) failing to take into account all of her limitations in fashioning the RFC and VE hypothetical. As explained below, the Commissioner's decision is based on harmful legal error and not supported by substantial evidence. The Court therefore reverses the Commissioner's decision and remands for further proceedings.

## I.    THE ALJ'S STEP TWO FINDINGS

### A.    Applicable Law

"[T]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *superseded by statute on other grounds*, 20 C.F.R. § 404.1529. To meet her burden of showing harmful error, Plaintiff must explain what limitations were erroneously omitted from her RFC due to the ALJ's alleged error at step two. *See, e.g.*, *Eriksen v. Colvin*, No. 15-159-PK, 2016 WL 3961712, at *4 (D. Or. July 22, 2016) (noting that any error at step two was harmless because the claimant failed to "point to any limitations erroneously omitted from the RFC" (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007))).

### B.    Analysis

Plaintiff argues that the ALJ erred at step two by not finding that her depression and anxiety were severe impairments, and by failing to consider the effects of her mental impairments in subsequent steps of the analysis. Specifically, Plaintiff argues that the ALJ failed

adequately to explain his basis for rejecting the opinion of the non-examining state agency psychologist, Dr. Ju, who found that Plaintiff is moderately limited in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, and to interact appropriately with the general public. (*See* Pl.'s Opening Br. at 4-6, arguing that the ALJ "did not explain the basis for his disagreement with the medical consultant" and "did not accommodate any limitations stemming from Plaintiff's non-severe mental impairments"). The Court agrees.

On July 19, 2017, Dr. Ju completed a mental residual functional capacity assessment. (Tr. 161.) Based on his review of Plaintiff's medical records, Dr. Ju determined that Plaintiff (1) "can carry out and persist with simple and routine tasks" but that "[s]he would have difficulty with more complex tasks" and (2) is limited to "casual contact with the public." (Tr. 162.)

The ALJ noted that he gave "some weight" to Dr. Ju's assessment, but concluded that "the evidence received at the hearing level shows that the claimant is not as limited as determined by the state agency consultants." (Tr. 19.) The ALJ noted that "[o]verall, the records show that the claimant has generally demonstrated alertness, orientation, appropriate mood and affect, a pleasant demeanor with appropriate behavior, a normal appearance with intact memory, attention and concentration, but poor insight and variable judgment." (Tr. 19., citing to the record.)

The Court's review of the record, however, reveals that the specific evidence on which the ALJ relied does not support his conclusion. For example, the ALJ noted that in the area of concentrating, persisting, or maintaining pace, "the claimant reported no difficulties finishing what she started." (Tr. 19.) However, the Function Report cited shows that Plaintiff responded "no" to the question about whether she finishes what she starts. (Tr. 283.) Further, although the

ALJ cited to progress notes using boilerplate language to describe mental health symptoms, he does not explain how this evidence is inconsistent with Dr. Ju's opinion. In fact, the same progress notes that the ALJ cited as inconsistent with Dr. Ju's proposed limitations also include notes that support Dr. Ju's findings regarding Plaintiff's mental impairments. (*Compare* Tr. 358, a September 4, 2015 progress note indicating "[a]ppropriate mood and affect" and "No agitation. Not anxious" *with* Tr. 360, the same September 4, 2015 progress note in which Plaintiff also notes "[she] has been dealing with a lot of external stress," and that she is "[h]aving a lot of external anxiety"; *compare* Tr. 367, an October 2, 2015 progress note with boilerplate language indicating "[n]ot anxious. Appropriate mood and affect. . . . Normal attention span and concentration. No suicidal ideation" *with* Tr. 366, the same October 2, 2015 progress note reporting "[a]nxiety, [d]ifficulty concentrating, [e]xcessive worry, [f]eeling down, depressed or hopeless, [l]ittle interest or pleasure in doing things"; *compare* Tr. 382, a January 6, 2016 progress note providing that Plaintiff is "Oriented to time, place, person & situation. No agitation. Not anxious. Appropriate mood and affect. Behavior is appropriate for age. No grandiosity. Not hopeless. Appropriate affect. Normal attention span and concentration. No suicidal ideation" *with* Tr. 379, the same January 6, 2016 progress note in which Plaintiff "presents with anxious/fearful thoughts, difficulty concentrating, difficulty falling asleep and restlessness"; *compare* Tr. 493-94, citing to boilerplate language from a September 14, 2017 progress note reporting "Oriented to time, place, person & situation. No agitation. Not anxious. Appropriate mood and affect. Behavior is appropriate for age. No grandiosity. Not hopeless. Appropriate affect. Normal attention span and concentration. No suicidal ideation" *with* Tr. 490, the same September 14, 2017 progress note in which Plaintiff reports "she's been very depressed as of recently").

Although the ALJ resolved step two in Plaintiff's favor here, the ALJ did not provide legally sufficient reasons for rejecting the evidence that supports Plaintiff's alleged mental impairments, nor accounted for those limitations in subsequent steps of the analysis. Regardless of whether the ALJ determined that Plaintiff's depression or anxiety were severe impairments, he was required to evaluate these impairments or incorporate them into the RFC, and the ALJ failed to do so here. Accordingly, the Court cannot conclude that the ALJ's error at step two was harmless. *See Urban v. Saul*, 808 F. App'x 453, 455 (9th Cir. 2020) (concluding that the ALJ's error at step two was not harmless because the RFC "identified no limitations stemming from [the claimant's] mental impairment" and the ALJ failed to explain how certain findings in the medical record contradicted other findings regarding the claimant's depression and anxiety); *Sorian v. Berryhill*, Case No. 19-cv-00445-DMR, 2020 WL 2768935, at *7 (N.D. Cal. May 28, 2020) (holding that the ALJ's step two error "is not harmless because the ALJ did not consider [claimant's] depression in assessing her RFC and did not explain why he did not include any mental health limitations in his step four analysis").

## II.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and

convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

## B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 21, finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ failed to meet that standard here.

### 1.    Daily Activities

The ALJ discounted Plaintiff's symptom testimony on the ground that it is inconsistent with her "reported activities." (Tr. 22.) In support of this finding, the ALJ noted that Plaintiff can "perform adequate self-care, drive a car, handle her finances, use a computer, engage in hobbies, and go to the store." (Tr. 22.) Plaintiff argues that her reported activities are not inconsistent with her symptom testimony and that the ALJ ignored Plaintiff's qualifying statements regarding her daily activities. (Pl's. Opening Br. at 13.) The Court agrees.

PAGE 9 – OPINION AND ORDER

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim,* 763 F.3d at 1165. Here, however, substantial evidence does not support the ALJ's finding that Plaintiff's level of activity is inconsistent with her claimed limitations. *See Garrison,* 759 F.3d at 1016 ("Recognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [her] level of activity [is] inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility.'") (citation omitted).

The ALJ noted that Plaintiff can perform adequate self-care. (Tr. 22.) However, Plaintiff never claimed that she is completely unable to function, but that her symptoms limit her to standing for fifteen minutes at a time and that she must elevate her feet once an hour for five to ten minutes. (Tr. 72-74, 78.) Plaintiff testified that due to the neuropathy in her legs she must frequently change positions from sitting, standing, and walking in order to alleviate leg pain and numbness in her lower extremities. (Tr. 78.) Plaintiff also testified that she experiences pain and numbness in her hands due to carpal tunnel syndrome which impedes her ability to perform tasks like writing and using the computer. (Tr. 80-83, 279, 282.) Third party statements corroborate Plaintiff's testimony that her symptoms do not completely limit her ability to perform self-care. (*See* Tr. 320, Plaintiff's son, Jesse O., reports that "[t]he neuropathy in her legs and feet has made it close to impossible for her to sit longer than 10 to 15 minutes at a time before she has to get up and move around" but that "she can still do the basic showering herself"; Tr. 272, Jesse O. reports that she can perform personal care but that "she just takes longer than normal"). Plaintiff's ability to perform self-care is not inconsistent with her proffered symptoms.

In discounting Plaintiff's testimony, the ALJ also noted that Plaintiff is able to drive a car. Although the ALJ referred to Plaintiff's 2016 Function Report, in which she checked a box that she drives a car, the record provides no details as to the frequency or distance that Plaintiff drives. (Tr. 22, citing Tr. 281.) In a Third-Party Function Report, Plaintiff's son, Jesse O., also checked a box indicating that Plaintiff drives, but reported that he is primarily responsible for driving Plaintiff. (*See* Tr. 274, reporting that he "take[s] her where she need[s] to go" by car). Absent further detail in the record, the ALJ's reliance on Plaintiff's driving to discredit her symptom testimony was misplaced. *See Boone v. Astrue*, No CV 12-4007-SH, 2013 WL 247559, at *6 (C.D. Cal. Jan. 23, 2013) (concluding that the ALJ erred in relying on claimant's testimony that she could drive and occasionally go shopping when "[t]here was no evidence or testimony evoked regarding how long Plaintiff could engage in these activities" and that such activities did not wholly contradict her testimony that "she feels numbness and stiffness in her hands, wrists, back, and legs, increasing pain in her hips and back, and that she can walk ten to fifteen minutes at a time")*; cf. Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to overall disability.").

The ALJ also discounted Plaintiff's symptom testimony on the ground that she can use a computer and handle her own finances. It is well settled that an ALJ errs when he disregards a claimant's limitations in performing her activities. *See Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016) (explaining that "'[a]n ALJ cannot disregard a claimant's limitations in performing' daily activities," and noting that the ALJ discounted the claimant's testimony based on the claimant's ability to complete chores, but the "ALJ ignored evidence" that the claimant received

help from family members and rarely left the house) (citation omitted); *Eckloff v. Berryhill*, No. 17-cv-01049, 2019 WL 2418987, at *5 (D. Nev. June 10, 2019) ("[T]he ALJ was not permitted to cherry-pick only the details from the function report that support a denial of benefits and conclude that her activity of daily living are fully intact.") (citation omitted). The ALJ did so here. (*See* Tr. 82, 282, reflecting that Plaintiff testified that when handling money she "make[s] more mistakes then [she] use[d] to" and that she "forget[s] things," and that she "can't be on [a] computer much anymore because of [her] hands and getting up and down constantly"; *see also* Tr. 82, "I can't even do that anymore, to fix one computer, so I can't stay on the computer that long. . . . Because my hands will go numb or I need to stand or I need to walk"). Accordingly, Plaintiff's limited use of a computer and handling of her finances were not a clear and convincing reason to reject her subjective symptom testimony.

The ALJ also noted that Plaintiff can "engage in hobbies," but the only hobbies Plaintiff reported were listening to audiobooks and "being with my kids." (Tr. 282.) It is not clear how these activities undermine Plaintiff's symptom testimony, and the ALJ offered no explanation.

Finally, the ALJ also highlighted the fact that Plaintiff noted in her 2016 Function Report that she "go[es] to the store with [her] kids sometimes," but that she sometimes needs someone to accompany her. (Tr. 282.) In contrast, however, the record reveals that on November 15, 2018, Plaintiff's son reported that Plaintiff "will stand and walk for about 10 minutes or so before she gets this hot sensation in her legs then they go immediately numb and she will fall if she isn't able to grab onto something" and that "this is why she doesn't even go to the store by herself anymore." (Tr. 320.) Evidence in the record confirms that Plaintiff's symptoms worsened in 2017 and 2018. (*See* Tr. 292, in a March, 13, 2017 Function Report, Plaintiff reported "[i]ncreased pain and weakness in leg" and "[i]ncreasing frequency, duration and intensity of

chronic pain in numerous parts of body"; Tr. 461, on September 28, 2017, Plaintiff reported to

Mark Simchuk, DPM, "a burning, a throbbing, a sharp and a dull aching quality" in her feet that

"has been progressively worsening"; Tr. 475, on November 28, 2017, Plaintiff reported to her

doctor that she experiences "burning and 'fire' pain in the lateral feet and toes bilaterally" that

can occur in a "fleeting manner [and] travel up toward the calves bilaterally. . . [a]fter which her

legs will 'go completely numb and I fall'"; Tr. 458, Plaintiff reported to her doctor on January

16, 2018 "a constant 6/10 pain that has been progressively worsening in her feet and legs,

described as a 'hot fire' sensation from her feet to her hips on both sides" and that "her pain is

currently worse in her hips, where she has been recently diagnosed with bursitis and is scheduled

for an injection"; Tr. 522-23, on September 11, 2018, Plaintiff reported "no improvement [in feet

and ankle pain] with a higher dose" of medication and that she is "having more pain radiating up

her calves . . . then feels a sharp pain and then needs to rest"). Based on conflicting evidence in

the record, the ALJ's reliance on Plaintiff's ability to go to the store to discount her symptom

testimony was misplaced.

In summary, the ALJ erred in discounting Plaintiff's testimony based on her reported

activities.

### 2.    Conservative Treatment

The ALJ also discounted Plaintiff's testimony based on her treatment history. (Tr. 22.) In

support of his finding, the ALJ noted that (1) Plaintiff's treatment has been "very conservative,

largely over-the-counter and prescription medication," and (2) Plaintiff "has not generally

received the type of medical treatment one would expect for a totally disabled individual."

(Tr. 22.)

Plaintiff argues that the fact that her doctors recommended surgery on several occasions

indicates that the impairments related to Plaintiff's feet were more severe than the ALJ

acknowledged. (Pl.'s Opening Br. at 11-12.) Plaintiff also contends that the ALJ erred by failing

to "consider Plaintiff's reasons for not seeking more aggressive treatment before using that as a

basis for rejecting her allegations." (Pl.'s Opening Br. at 12.) The Court agrees.

It is well settled that an ALJ may discount a claimant's testimony based on evidence of

conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that

"evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding

severity of an impairment"). "[I]n assessing a claimant's credibility, the ALJ may properly rely

on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed

course of treatment.'" *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded by

regulation on other grounds* (quoting *Tommasetti*, 533 F.3d at 1039). However, discounting a

claimant's credibility is not proper where "the claimant has a good reason for not seeking more

aggressive treatment." *Carmickle v. Comm'r Soc. Sec. Admin*., 533 F.3d 1155, 1162 (9th Cir.

2008) (citing *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)); *cf. Fair v. Bowen*, 885 F.2d 597,

604 (9th Cir. 1989) ("[A] finding by the ALJ that the proffered reason [for not seeking treatment]

is not believable, can cast doubt on the sincerity of the claimant's pain testimony.").

The record indicates that Plaintiff's doctors recommended surgery as a treatment option

on several occasions. John Castle, M.D., reported that Plaintiff "would likely benefit from a

tendo-Achilles lengthening and removal of some of the osseous proliferation/posttraumatic

calcification within the soft tissue of the Achilles." (Tr. 340, 373; *see also* Tr. 379, noting that

Plaintiff "last saw Dr. Castle on 11/19/15" and that "surgery was talked about due to her equinus,

however surg[ery] pending and [Plaintiff] is planning to [follow up] . . . in 3-4 weeks after she

gets using the orthotics"). Peter Grant, M.D., performed electrodiagnostic testing which revealed

tarsal tunnel syndrome in both of Plaintiff's feet and generalized peripheral neuropathy, and he

noted that "[b]ilateral tarsal tunnel problems may need to be addressed surgically." (Tr. 477.) Elise Janowak, DPM, discussed possible treatment options with Plaintiff, which included "surgical bilateral tarsal tunnels decompression." (Tr. 460.)

Plaintiff proffered several valid reasons for not pursuing surgery. The record demonstrates that Plaintiff had a history of multiple surgeries on her hands and feet prior to the alleged onset date. (*See, e.g.*, Tr. 330, 340, 475.) Plaintiff was born with bilateral club feet and underwent multiple corrective surgeries as a child. (Tr. 340, 354, 390, 398, 410.) Plaintiff sought physical therapy and treatment throughout her childhood and engaged in physical therapy off and on through adulthood. (Tr. 349.) The record reveals that Plaintiff repeatedly expressed concern about pursuing further surgery for her feet due to the long recovery time and limited success rate. (*See* Tr. 458, "She was also advised that surgery to correct both feet and ankles would have a 20% success rate and would require a full recovery period of 1 year per side"; Tr. 507, "[S]he was advised about surgery as being an option again, however due to long recovery time and low success rate, [patient] is hesitant"; Tr. 390, noting that Plaintiff "doesn't want to have to get surgery if not necessary and chose the conservative route which is why the orthotics were ordered" and Plaintiff "states she may want a second opinion in the future . . . if the podiatrist feels surgery is the only option"; Tr. 396, "depending on improvement with this, she may defer surgery however is still thinking about this, however may want a 2nd opinion in the future from another podiatrist").

With regard to Plaintiff's carpal tunnel diagnosis, she underwent carpal tunnel release surgery in 2010 and had subsequent revisions to the procedure in 2014. (Tr. 70-71, 80, 349.) In 2014, Plaintiff saw Larry Maukonen, M.D., for a nerve conduction study. (Tr. 330.) Dr. Maukonen reported that Plaintiff had minimally prolonged distal median sensory latencies,

bilateral tennis elbow, and venous thoracic outlet syndrome. (Tr. 332.) At that time, Dr. Maukonen did not recommend further surgery. (*Id.*) At the hearing, Plaintiff testified that the pain in her hands improved after the surgery, but "they started to get bad again" about a year ago. (Tr. 80.) Plaintiff reported that she "could have surgery again" but that her doctor did not recommend it. (Tr. 87.) Further, Plaintiff stated that she was concentrating her treatment efforts on her leg pain which had become increasingly more severe. (Tr. 82.) Thus, the record reflects valid reasons why Plaintiff chose to forego further surgeries to treat her carpal tunnel syndrome.

The ALJ failed to consider Plaintiff's reasons for not seeking more aggressive treatment or explain why these reasons were insufficient. Accordingly, the ALJ improperly discounted Plaintiff's testimony on the ground that she pursued only conservative treatment. *See Ma v. Berryhill*, 17-cv-05696-RS, 2019 WL 1090389, at *5 (N.D. Cal. Mar. 8, 2019) (finding that the ALJ's failure to consider the claimant's reasons for not seeking more aggressive treatment was error when the ALJ relied on the claimant's refusal to undergo epidural injections and surgery, where he "addressed his refusal to take an epidural shot, stating he was 'scared' to take the shot and believed it was 'invasive'"); *cf. Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (finding that the claimant's discontinuance of recommended physical therapy because her husband could no longer drive her and she was unable to drive herself was a "sufficient explanation for her decision to discontinue physical therapy").

### 3.    Medical Record

The ALJ also discounted Plaintiff's testimony on the ground that it was inconsistent with the medical evidence. (*See* Tr. 21, summarizing the objective medical evidence, and concluding that "the medical record does not support the severity of [Plaintiff's] symptoms"; *see also* Def.'s Br. at 7-8, agreeing with the ALJ's determination that "discrepancies [in the medical record] supported the ALJ's decision to discount Plaintiff's subjective complaints").

PAGE 16 – OPINION AND ORDER

As discussed above, the ALJ erred in discounting Plaintiff's testimony based on her daily activities and conservative treatment. Even if the objective medical evidence does not support Plaintiff's testimony, the ALJ cannot properly rely on that as the sole reason to discredit her testimony. *See Taylor v. Berryhill*, 720 F. App'x 907, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony) (citation omitted). Accordingly, the Court concludes that the ALJ erred in discounting Plaintiff's testimony. *See Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1282, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony." (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005))).

For these reasons, the Court concludes that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony.

## III.    LAY WITNESS TESTIMONY

### A.    Applicable Law

An ALJ "'must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without providing reasons that are "'germane to each witness.'" *Stout*, 454 F.3d at 1056 (citations omitted). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating

physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 1:10-cv-1432-AWI-SKO, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

### B.    Analysis

Plaintiff argues that the ALJ erred by failing to evaluate the lay witness testimony provided by Plaintiff's son, Jesse O., and Plaintiff's friend, Betty S.

On December 16, 2016, Plaintiff's son, Jesse O., completed a Third-Party Function Report. (Tr. 271-78.) Jesse O. reported that (1) Plaintiff "can't stand, sit, or walk for long periods of time and her hands are always numb"; (2) Plaintiff "doesn't do much of anything anymore" and "she just sticks to herself"; (3) "her stress and anxiety is horrible" and "she was never like that before." (Tr. 271, 277, 285.) On November 15, 2018, Jesse O. provided an additional third party statement, where he noted that (1) Plaintiff's "neuropathy in her legs and feet has made it close to impossible for her to sit longer than 10 to 15 minutes at a time before she has to get up and move around"; (2) "she forgets things so easy and never finishes anything she starts"; (3) Plaintiff could perform simple tasks, like pruning flowers or cooking, for only five to ten minutes before the pain became too severe; (4) "[h]er depression makes it so she doesn't talk to any of her friends anymore, she doesn't talk to any family besides me and my sister, and her [d]ad"; (5) "[s]he doesn't sleep much due to her pain in her legs, feet and back" and (6) "she is always having to move positions and has to have her heating pad at all times so she can have a little bit of relief." (Tr. 320-21.) On December 12, 2018, Plaintiff's friend, Betty R., submitted a letter

indicating that over the past three years Plaintiff had become increasingly more socially withdrawn due to her chronic pain. (Tr. 322.)

The ALJ noted that "the record includes multiple third party statements" and that he "has considered these supportive statements and observations regarding the claimant's impairments and associated decreased work capacity when determining the above residual functional capacity." (Tr. 23.) However, the ALJ did not evaluate or discuss the lay witness testimony. Plaintiff argues that the ALJ erred by failing to offer germane, or any other reasons, to discredit the lay witness statements. (Pl.'s Opening Br. at 15.) The Court agrees. *See Stout*, 454 F.3d at 1053 (holding that lay testimony concerning the claimant's symptoms or ability to work "*cannot be disregarded without comment*" (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996))).

The Commissioner acknowledges that the ALJ did not properly evaluate the lay witness statements, but argues that any error was harmless because the lay witness statements were consistent with Plaintiff's own testimony which the ALJ properly discounted. (Def.'s Br. at 9); *see also Molina*, 674 F.3d at 1122 (holding that "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims'" (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011))).

The Court concluded above that the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's symptom testimony. Given that Jesse O. and Betty S. allege limitations similar to those Plaintiff alleged, and that the ALJ did not incorporate these limitations in the RFC, the Court finds that the ALJ's error here was not harmless. *See Robbins*, 466 F.3d at 885 ("Because the ALJ did not make a legally sufficient adverse credibility finding with regard to

Robbins's own testimony, we cannot say with respect to [lay witness] testimony that no reasonable ALJ, when fully crediting the testimony, could have reached a different determination.") (quotation marks and citation omitted).

## IV.    REMEDY

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

The Court does not determine whether the credit-as-true standard is met here because, even if Plaintiff satisfies the standard, the record creates serious doubt as to whether Plaintiff is disabled. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) ("[W]e need not determine whether the three preliminary [credit-as-true] requirements are met because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled.").

The record includes reports that create serious doubt about Plaintiff's disability. (*See, e.g.*, Tr. 352, 357, 401, 476, noting Plaintiff's gait is normal; Tr. 332, 339, 352, 401, Plaintiff exhibited full strength during exams; Tr. 330-332, noting "no weakness," "no numbness in feet," "negative tinel over the median, ulnar and radial nerves at the wrists and ulnar nerve at the elbows," and "no swelling of hands"; Tr. 322, "patient has had marked improvement in her nerve conduction studies since the study done in February 2010"; Tr. 532, noting that Plaintiff "denies muscular weakness, numbness or tingling, changes in coordination, changes in concentration" and "denies joint pain, muscle pain, back pain"; Tr. 349, Plaintiff "still has pain in her feet, ankles and back, however is tolerable"; Tr. 384, Plaintiff "has been doing well overall"; Tr. 396, noting that treatment provider "do[es] not have a lot of objective evidence [] to cont[inue] treating her as she has been on narcotics for many years" and "she does not have medical objective evidence to continue to be on such high doses of narcotics"; Tr. 397; noting that Plaintiff "managed for years on high dose narcotics despite not a lot of objective [findings] to warrant this therapy going on"; Tr. 408, indicating that hip x-ray was negative and that "bone density and trabecular pattern appear normal," and "[t]here are no acute fractures or dislocations visualized," and "[j]oint spaces and soft tissues appear normal"; Tr. 459, noting that Plaintiff "reports no pain on palpation to bilateral feet and ankles"; Tr. 473, noting "no edema" and "no tenderness" to the extremities).

For these reasons, the Court concludes that this is not the rare case in which remand for an award of benefits is appropriate, and the Court instead remands for further administrative proceedings.

///

///

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 9th day of November, 2020.

_Stacie F. Beckerman_

**HON. STACIE F. BECKERMAN**
United States Magistrate Judge